Judge Robertson
delivered tho opinion of the Court.
Samuel Baldwin sued Lewis Bridges as principal, and others as his securities, for breaches of a bond of indemnity, executed by them to him, on the 14th day of June, 1819, to indemnify him as the sheriff of Mason county, for any liability which he might incur, and all loss which he might sustain by the acts of said Bridges, as his deputy. The bond, in its condition, recites that the office had been, before that time,‘farmed” to Bridges, for a price which had been paid by others. And the declaration avers, among other things, that Bridges was appointed and regularly qualified as the deputy of Baldwin, at the February term, 1819, of the county court of Mason.
The defendants demurred to this declaration, and the court having sustained the demurrer, Baldwin has appealed to this court.
*8 The only objection which has been made, or can be perceived, to the declaration, is, that it shows a sale . of office.
It might have been questioned, whether'the sale of the privilege and emoluments of the office of sheriff, to a deputy, is within the reason or policy which forbids the sale of office. It is necessary to the administration of justice, that there shall be deputies. They cannot be procured without compensation. It cannot be expected and ought not to be required, that the sheriff shall allow his deputies the fees and profits of his office, for all the services which may be performed by them. If, therefore, he should, (as is usual,) do so for mere convenience and securityjhe is indemnified generally, for the excess of the emoluments, beyond the value of the service, by a payment of the difference, by the deputy, to him. When such a contract is made, it might be doubted whether it is literally a sale of office, or comes within the reason of public policy which prompted the interdiction of sales of office.. The office is still held by the sheriff. He superintends the duties of it. He is responsible for all acts done by his deputies. He has only granted to them the privilege of acting for him, and receiving to their own use, his fees, in consideration that they gave or agreed to give him a part of them* or the value of a certain -part, in gross.
But whatever doubts might have been felt on this subject, on general principles, it is not now, asa question of law, open to discussion in this state. It has been long settled by the authority of this court, and the court of appeals of Virginia, that a contract of sale of the office of deputy sheriff is void.
It would not necessarily result, from this doctrine^ that a contract for indemnifying the sheriff for the acts of his deputy, would be void. There is an obvious difference betwixt the two contracts. By the one, a right is acquired to exercise the powers and receive a portion of the emoluments of the office. By the other the deputy, being in office,■ secures to the principal a faithful performance of its duties.
It might well be urged by those who, in the absence of any direct authority, would concede the illegality *9 of the contract of sale, that the agreement to be faithful, would, on both moral and legal principles, be obligatory, and that it would be immaterial the right to use the office had been acquired. As the principal is liable for the acts óf his deputy, the latter is under a moral obligation to indemnify him. He is under a clear, legal obligation to do so. And this obligation may be enforced on him without a bond or any express contract, positively binding him. Abond does not create or increase this obligation. Its only object is to secure its fulfilment, by the guaranty of others.
It might-, therefore, be plausibly, if not unanswer-ably argued’, that as the principal in the bond wag bound, without the written memorial, and as the obligation of a Security is coextensive with that of his ¡principal, the bond is legal and obligatory on both. And this reasoning would be conclusive; if the bond of indemnity be not an integral part of the contract of sale. As a speculative question, it might be doubted whether such a bond would not be equally valid, although it was executed in consideration of the sale of office. But this too, is Settled by a series of decisions by this court. See Love vs. Buckner, IV. Bibb, 506; Hull vs. Davis, l. Litt. 9.
To the authority of these cases, we cheerfully submit. We do not know that we would incline to a different decision, if we were not instructed by any authority, on the subject. We have only suggested some few of the reasons which might justify a diversity of opinion.
But we are not willing to extend these decisions farther than the principle, which they establish, will require.
They have not declared or even intimated, that a bond of indemnity, executed longafter the qualification as deputy, and not shown to be a part of thé contract of deputation, is either illegal or immoral; And it seems to us very clear, that the reason which has been supposed to denounce the contract of sale, has no application to a subsequent, separate indepen-dant contract for securing fidelity in office.
*10 After the deputy shall have been constituted, and is in the discharge of official duty, we cannot imagine any reason of expedience or justice why the principal should not have a right to exact of him a positive engagement, that he will be so far faithful to his trust as to exempt the responsible head from injury, by his faithless or improvident acts. We cannot perceive why he may not as well do this, when he holds his place by purchase, as when he performs its duties gratuitously.
In this case the declaration does not Contain facts which could vacate the bond, by the most rigid application of the authorities cited.
We do not doubt that it shews undeniably, that Bridges purchased the appointment of deputy. But it also shews that he was appointed in February, and did not execute the bond of indemnity until June succeeding. No fact is stated, from which it can be inferred, that this bond was a part of the contract of sale, or entered into the consideration which led to the appointment. If it did not, according to any decision orreasonable rule on the subject, it is binding, in the forum of the most scrupulous conscience, as well as in that of the purest law.
If the deputy obtained his office by means which the law will not approve, his official acts are nevertheless valid, and the principal is responsible for them. The office is not void. Why then may not the deputy bind himself to do his duty? Can the public interest suffer or be jeoparded by such an obligation? Does public policy forb’d it? Does enforcing it, encourage the barter of office? Does vacating it prevent such contracts of sale? It can not surely, if the indemnity is no part of the consideration of the sale.
To invalidate a bond' like that on which this suit was brought, would not only encourage fraud, but operate to the prejudice of the public interest.
It would either discourage the employment of deputies, or stimulate the principal to exact a higher price for insurance, and incite the deputy to acts of spoliation for his indemnity, especially as he may then perpetrate them with impunity.
Beatty, for plaintiff; Brown, for defendants.

A bond of indemnity by a deputy sheriff, is not more necessary or usual when the office is purchased, than when it is acquired according to strict law. It is right in each case; and. is a natural consequence of the relation of principal and deputy.

This opinion of the impolicy and injustice of in-validatingthe bonds ofdeputies for indemnifying their principals, is fortified by the public sentiment. An act of 1820, II. Dig. 1146, declares that such bonds shall be obligatory, even when executed in consideration of sale to. the deputy.
This act did not pass until a few months, after the date of the bond of Bridges and securities. It therefore, could not benefit Baldwin, if he needed its aid. But the bond in this case, required, in our opinion, no legislative sanction; a'nd the act of 1820, was not designed to give legal obligation tQ a bond executed under similar circumstances, because it was known that it would be valid without any act of assembly. The act has been noticed merely to shew, that no bond of indemnity by a deputy to his principal, is deemed incompatible now with pure morality, and the integrity of office. A bond uncontaminated by the sale, never was vicious. If therefore, the defendants mean to escape from their bond, by seeking refuge in the protection of any rigid rule of law, they must shew themselves entitled to favor by pleading the necessary facts. Whether they can ever do so availably we know not. It is enough for us that the declaration is good.
Wherefore, the judgment of the circuit courtis ret versed, and the cause remanded for further proceed’ ings.